[Civ. No. 9164.   Fourth Dist., Div. One.   July 8, 1969.]

SAN DIEGO DISTRICT COUNCIL OF CARPENTERS et al., Plaintiffs and Respondents, v. WOOD, WIRE AND METAL LATHERS INTERNATIONAL UNION, LOCAL 260 et al., Defendants and Appellants.

Gilbert & Nissen and Robert W. Gilbert for Defendants and Appellants.

Levy, DeRoy, Geffner & Van Bourg, Kaminar, Sorbo, Andreen, Thorn & Gallagher and Leo Geffner for Plaintiffs and Respondents.

COUGHLIN, J.—This appeal is from an order granting a petition to vacate an arbitration award and denying a counterpetition to confirm the award.

Robert Ek, one of the respondents on appeal, was a contractor in the construction industry; was an employer-party to a collective bargaining agreement between the San Diego Lathing Contractors, and the Wood, Wire and Metal Lathers International Union, Local 260, one of the appellants herein;

also was an employer-party to a collective bargaining agreement between the Gypsum Drywall Contractors of California and Carpenters Councils and Carpenters Local Unions, including the San Diego District Council of Carpenters, also one of the respondents herein; and assigned members of the Carpenters Union work concerning the construction of walls and ceilings, as part of two construction jobs, of a type subject to the provisions of both collective bargaining agreements. The Carpenters Union described the work as "Sheet Rock" work, and the Lathers Union described it as "Tufcon" work. The work consisted of the installation of panels of plaster base material, taking the place of standard wood lath or conventional plaster board. The panels consisted of a material produced and sold by the United States Gypsum Company under the trademark name of "Tufcon." Each union claimed jurisdiction over the work in question under its collective bargaining agreement.

Both agreements contained provisions requiring arbitration of disputes between the contracting parties. The Lathers Union claimed Ek violated the terms of the agreement with it, contending he was required to assign the work to members of that union. A representative of the Lathers Union "indicated" to Ek if the latter did not change the assignment of the work to members of the Lathers Union "it would have an effect on the use of lathers" on other jobs then in progress. This threat did not materialize. Instead, the Lathers Union filed a complaint against Ek with the arbitration board, described in the agreement as a Joint Committee, alleging his assignment of the work to the carpenters was a violation of his agreement with the Lathers Union. In due course the Joint Committee found Ek "guilty" of "violation of the Bargaining Agreement with the Lathers . . . i.e., hiring carpenters to do the Tufcon work" on the two jobs in question; levied a fine against him of $400; and directed him to pay the fine to the Joint Committee within 60 days, otherwise the agreement would be cancelled and the fine charged against his bond.

The Carpenters Union and Ek initiated this proceeding by petitioning the court to vacate the award and the decision of the Joint Committee. The Lathers Union replied and petitioned the court to confirm the award. A hearing was held; evidence was presented by declarations; the court made written findings of fact; and the order vacating the award and refusing to confirm was made.

The collective bargaining agreement to which Ek and the Lathers Union are parties contains the following provision:

"ARTICLE XI

"JURISDICTIONAL DISPUTES

"All jurisdictional disputes shall be resolved in a manner suitable and agreeable to the crafts involved in the dispute or disputes, and the National Labor Relations Board.

"No jurisdictional dispute involving the Union signatory hereto or on whose behalf this agreement is made shall be submitted to the Joint Committee, but shall be determined in the manner and by the procedure of the National Joint Board for the Settlement of Jurisdictional Disputes or any other approved by the International Union, and which is satisfactory to the National Labor Relations Board."

The Carpenters Union and Ek claim the dispute acted upon by the Joint Committee was a jurisdictional dispute; the Joint Committee, by virtue of the foregoing provision of the agreement, was not authorized to act upon the dispute; and, for this reason, the court properly vacated and refused to confirm the award.

The parties agree Ek is engaged in an industry affecting interstate commerce; for this reason the case must be determined under federal law (*Butchers' Union Local 229* v. *Cudahy Packing Co.*, 66 Cal.2d 925, 930, 931 [59 Cal.Rptr. 713, 428 P.2d 849]; *Retail Clerks Union* v. *Thriftimart, Inc.*, 59 Cal.2d 421, 425 [30 Cal.Rptr. 12, 380 P.2d 652]); a state court may determine whether a dispute is covered by the arbitration provisions of a collective bargaining agreement (*John Wiley & Sons, Inc.* v. *Livingston*, 376 U.S. 543, 546 [11 L.Ed. 2d 898, 902, 84 S.Ct. 909, 912-913]; *Retail Clerks Union* v. *Thriftimart, Inc., supra*, 59 Cal.2d 421, 423-425); and, under federal law, in determining whether arbitration provisions are susceptible of an interpretation covering an asserted dispute doubts should be resolved in favor of coverage. (*United Steelworkers of America* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417-1418, 80 S.Ct. 1347, 1353]; *Butchers' Union Local 229* v. *Cudahy Packing Co., supra*, 66 Cal.2d 925, 931, 937-938.)

Whether a dispute is subject to the arbitration provisions of a collective bargaining agreement is a matter to be determined by the court on the basis of the agreement. (*John Wiley & Sons, Inc.* v. *Livingston, supra*, 376 U.S. 543, 546-547

[11 L.Ed.2d 898, 902-903, 84 S.Ct. 909, 912-913]; *Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238, 241 [8 L.Ed.2d 462, 465, 82 S.Ct. 1318, 1320]; *United Steel Workers of America* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 582 [4 L.Ed.2d 1409, 1417, 80 S.Ct. 1347, 1353]; *Retail Clerks Union* v. *Thriftimart, Inc., supra,* 59 Cal.2d 421, 425-426.)

The Lathers Union contends jurisdictional disputes are not excepted from arbitration by the Joint Committee and the dispute in question is not a jurisdictional dispute.

The provision of the agreement that no jurisdictional dispute involving the Lathers Union shall be submitted to the Joint Committee, but shall be determined in the manner and by the procedures of the National Joint Board for the Settlement of Jurisdictional Disputes, is clear and unequivocal. Contrary to the Lathers Union's contention, three other provisions in the agreement do not create any uncertainty or ambiguity in the premises. One of them relates to "a work stoppage because of a jurisdictional dispute"; authorizes the employer to submit "the matter" to the Joint Committee; and provides the work stoppage shall cease upon receipt of "the notice" by the Joint Committee. We conclude "the matter" submitted to the Joint Committee under this provision is the "work stoppage" rather than any "jurisdictional dispute." The second provision is general in nature and governed by the specific provision excluding jurisdictional disputes from Joint Committee action. The third provision is so ambiguous it is meaningless. An interpretation of the agreement resulting in the submission of jurisdictional disputes to the Joint Committee would defeat and render inoperative the provision directing their determination by the National Joint Board and, under well established principles, should be rejected. (Civ. Code, § 1643.)

The Carpenters Union and the Lathers Union, through their affiliates, are parties to a national arbitration panel commonly referred to as the National Joint Board for the Settlement of Jurisdictional Disputes. This board consists of representatives of various unions engaged in the building and construction trades and of national contractors' associations. The Carpenters Union and the Lathers Union, by virtue of their affiliation, are obliged to submit to the National Joint Board all disputes involving an assignment of work to either carpenters or lathers by a contractor also bound by the pro-

cedures of the National Joint Board. Respondent Ek was such a contractor by virtue of his agreement with the two unions.

The issue at bench is whether, under the agreement between Ek and the Lathers Union, the National Joint Board or the Joint Committee shall arbitrate a jurisdictional dispute, and not whether such a dispute is subject to arbitration; the policy of federal law favoring arbitration is not involved; and an interpretation of the agreement declaring the National Joint Board, and not the Joint Committee, shall arbitrate such dispute is not at variance with that policy.

▆ Included within the classic definition of a jurisdictional dispute is ''a controversy as to whether certain work should be performed by workers in one bargaining unit or those in another.'' (*Carey* v. *Westinghouse Elec. Corp.,* 375 U.S. 261, 263 [11 L.Ed.2d 320, 323, 84 S.Ct. 401, 404] ; *Transportation-Communication Emp. Union* v. *Union Pac. Ry. Co.,* 385 U.S. 157, 161 [17 L.Ed.2d 264, 268, 87 S.Ct. 369, 371].)

▆ The trial court found the dispute acted upon by the Joint Committee arose out of the assignment to carpenters of work within the ''general identifiable area'' over which both the Carpenters Union and the Lathers Union, by virtue of their respective collective bargaining agreements with Ek, claimed jurisdiction; was a dispute concerning work assignment which both unions have agreed to submit to the National Joint Board for settlement; and constituted a jurisdictional dispute. There is no merit to the contention this finding conflicts with another trial court finding.

The dispute, contrary to the Lathers Union's contention, was not the product of a unilateral act by Ek; did not result exclusively from an alleged violation of its agreement with Ek; but arose out of the Carpenters Union's agreement as well as the Lathers Union's agreement, each requiring Ek to assign the work in controversy to members of the respective unions executing such agreements; and was one of many similar disputes arising out of a general controversy between the two unions respecting assignment of drywall construction work.[1]

[1]Jurisdictional disputes involving the assignment of work in the drywall construction industry between the Lathers Union and the Carpenters Union were considered in *N.L.R.B.* v. *Lathers Local 9,* 255 F.2d 649, *Lathers Local 173,* 121 N.L.R.B. 1094, *Lathers Local 59,* 125 N.L.R.B. 138, *Carpenters Dist. Council of Denver,* 146 N.L.R.B. 1242, *Local 1662 Carpenters,* 139 N.L.R.B. 591, *Local 68 Lathers,* 142 N.L.R.B. 1073, *Local 238 Lathers,* 148 N.L.R.B. 1119, *Local 496 Carpenters,* 151 N.L.R.B. 758,

Pertinent to the case at bench is the concept a collective bargaining agreement is not an ordinary contract governed by common law principles applicable to private contracts. (*Transportation-Communication Emp. Union* v. *Union Pac. Ry. Co., supra,* 385 U.S. 157, 160-161 [17 L.Ed.2d 264, 268, 87 S.Ct. 369, 371].) "In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." (*Ibid.*)

The collective bargaining agreement with the Carpenters Union contained a jurisdictional dispute provision which, as applied to the circumstances in the case at bench, provided for determination of jurisdictional disputes between the Carpenters Union and the Lathers Union by the National Joint Board. Under his agreement with each of these unions, Ek would be bound by the decision of the National Joint Board. Arbitration of a work assignment dispute under each agreement, by each of the arbitration boards provided for therein, would not finally settle the dispute between all of the parties interested because of the probability of divergent results. The implied purpose of the jurisdictional dispute provision in each agreement is to effect a determination of a work assignment dispute by an arbitration board before whom all parties appear, present their case, and are bound by the results. (Gen. see *Transportation-Communication Emp. Union* v. *Union Pac. Ry. Co., supra,* 385 U.S. 157, 160, 164 [17 L.Ed.2d 264, 267, 270, 87 S.Ct. 369, 371-373]; *N.L.R.B.* v. *Radio & Television Broadcast Engineers Union,* 364 U.S. 573, 579-583 [5 L.Ed.2d 302, 307-309, 81 S.Ct. 330, 334-336].)

The Lathers Union cites *Carey* v. *Westinghouse Elec. Corp., supra,* 375 U.S. 261, in support of its position. The collective bargaining agreement in the cited case did not exclude a jurisdictional dispute from the arbitration procedures therein prescribed. The decision there is not applicable to the issue at bench.

The order is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

*Local 964 Carpenters,* 141 N.L.R.B. 1138, *Local 1061 Carpenters,* 151 N.L.R.B. 1657, *Omaha Carpenters Dist. Council, 152* N.L.R.B. 1293, *Carpenters Local 253,* 152 N.L.R.B. 1285, *Local 68 Lathers,* 153 N.L.R.B. 1189, *Cuyahoga Lake, Jeauga & Ashtabula Counties Dist. Council & Locals 11, 182, 105, 104 Carpenters,* 142 N.L.R.B. 163, *Lathers Local 68,* 159 N.L.R.B. 1409.